

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-059-CV

IN THE INTEREST OF
A.S., T.S., AND C.S.,
CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

After a bench trial, the trial court terminated Appellant J.S.'s parental rights to his daughters A.S., T.S., and C.S.  In one issue, he contends that the evidence is factually insufficient to support the trial court's finding that the termination of his parental rights is in the children's best interest.  Because the evidence is factually sufficient to support the finding, we affirm the trial court's order of termination.

---

[1] *See* Tex. R. App. P. 47.4.

Appellant also raised the issue of the factual sufficiency of the evidence to support the best interest finding in his timely filed combined statement of points and motion for new trial. We decline the State's request to reconsider our rulings in *In re D.W.*[2] and *In re A.J.H.*[3] and hold that this issue was sufficiently preserved.

Termination decisions must be supported by clear and convincing evidence.[4] Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[5] Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child.[6]

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our

---

[2] 249 S.W.3d 625, 645 (Tex. App.—Fort Worth 2008, pet. denied) (en banc).

[3] 205 S.W.3d 79, 80–81 (Tex. App.—Fort Worth 2006, no pet.).

[4] Tex. Fam. Code Ann. §§ 161.001, 161.206(a) (Vernon Supp. 2008).

[5] *Id.* § 101.007 (Vernon 2002).

[6] *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

own.[7] We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent-child relationship would be in the best interest of the child.[8] If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.[9]

There is a strong presumption that keeping a child with a parent is in the child's best interest.[10] Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest.[11] The following factors should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment:

> (1) the child's age and physical and mental vulnerabilities;
>
> (2) the frequency and nature of out-of-home placements;

---

[7] *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[8] *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

[9] *H.R.M.*, 209 S.W.3d at 108.

[10] *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

[11] Tex. Fam. Code Ann. § 263.307(a) (Vernon 2002).

3

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child;  and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.[12]

Other, nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)    the desires of the child;

(B)    the emotional and physical needs of the child now and in the future;

(C)    the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the best interest of the child;

---

[12] *Id.* § 263.307(b); *R.R.*, 209 S.W.3d at 116.

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.[13]

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.[14]   Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.[15]   On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.[16]

The evidence shows that A.S., T.S., and C.S. were five, four, and three years of age respectively at the time of trial in late 2007 and early 2008.  They first entered the State's care via Dallas County CPS in June 2005 after allegations that their mother neglected and abused them.  (Their mother's rights

---

[13] *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

[14] *C.H.*, 89 S.W.3d at 27.

[15] *Id.*

[16] *Id.*

were also terminated; she did not appeal.) Appellant was homeless and a drug addict at the time of the first removal. While the State offered him services, he did not participate in any; he did test positive for cocaine. He visited the children no more than five times during the first eighteen months that the children were in the State's care.

In June 2006, the State placed the children with Appellant's brother, B.S., who was later awarded permanent managing conservatorship in December 2006. Appellant saw the girls occasionally when they were with his brother but did not provide contact information to the State and never attempted to contact the State during that time.

In January 2007, B.S. took the children to the Fort Worth CPS office and relinquished custody. The State could not locate Appellant at that point but filed a petition for termination of parental rights later that month and served him with the petition on February 1, 2007. Sh'niqua Alford, a CPS caseworker, met with Appellant, who was still homeless. She told him that B.S. had returned the children to CPS and that they were going to remain in foster care; she also told him about the family service plan. Appellant stated that he wanted to participate in services but wanted his children to live with B.S. Alford gave Appellant all of her contact information; Appellant provided none. He did not contact Alford again until several months later.

On August 31, 2007, Appellant left a message with Alford, stating that he wanted the children back. He went to her office, and they again discussed the family plan. Alford advised him that he should start the services immediately and take a drug test. He tested positive for cocaine. Appellant denied using drugs at that time. Appellant visited his children in September 2007. That was the last contact he had with his children.

On the last day of trial, Appellant reported that he had not used drugs in the previous three months, he had a job at Burger King, and he had an apartment. But he had not pursued completing a GED or attending AA or NA meetings after hitting minor stumbling blocks, he had not pursued any other type of drug treatment, and the program paying the rent and electricity on his one-bedroom apartment, Project New Start, would not make payments after thirty days' notice if he got physical custody of his children.

While Appellant testified that his children were happy to see him during the one visit he made between January 2007 and the trial that ended a year later, their foster mother, with whom they had lived several months, testified that the children did not talk about him and cried when confronted with the possibility of having to live with him—C.S. regressed and began to wet herself at different times, T.S. was tearful and scared, and A.S. "fed off everybody else."

8

All of the children had made outcries of sexual abuse against B.S., which were still under investigation, by the time of the last day of trial in January 2008, and there was evidence that all three girls would need therapy to address that issue. Further, there was evidence that all three girls have trust issues relating to men.

Additionally, A.S. has speech problems and a cognitive deficiency. She needs extra help in school and will continue to need help. She has trouble processing language and trouble with math. She may need speech therapy and occupational therapy. Even though she was in kindergarten at the time of trial, she functioned at the level of a two-year-old. She was also getting neurological and genetic testing to try to determine what was preventing her from developing age-appropriately.

When A.S. first began to live with the foster mother about ten months before the final day of trial, she was quiet and shy, but at the time of trial she was excited about school, had friends, and had begun opening up.

T.S., the middle child, mothers her two sisters. She is on track developmentally but has some attachment and bonding issues. When she first began living with the foster mother, she had nightmares and was afraid to go back to sleep. At the time of trial, she was thriving.

C.S., the youngest child, has some speech issues. She used foul language when she first arrived at the foster mother's house, but at the time of trial she used foul language less and would correct herself when she did use it.

The children's therapist testified that the girls need to be placed in a stable environment. She testified that if they were placed in an unstable or unstructured environment, they would be "highly dysfunctional, probably not being able to perform well in school; . . . and [it would be] very difficult for them to progress in school as other children do."

There was evidence that the children had bonded with the foster family, that the children were happy and well cared for in a stable home, and that they got a lot of attention and support from their foster family. The evidence also showed that the foster parents wanted to adopt the children and that such adoption was the State's plan. Further, the foster parents were willing to maintain the children's contact with other siblings.

There was little evidence of Appellant's parental ability. He admitted that he had not nurtured or fed the children since 2005 and that he did not meet his own characteristics of a good father—"[b]eing there, caring for them, feeding, bathing, nurture." During the six-week delay between the first and second days of trial, Appellant still did not visit the children or take a drug test.

10

Applying the appropriate standard of review and considering the *Holley* factors and the statutory factors for evaluating Appellant's willingness and ability to provide his children with a safe environment,[17] we hold that the evidence is factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the children's best interests. We therefore overrule his sole issue and affirm the trial court's order of termination.

PER CURIAM

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: November 6, 2008

---

[17] *See* Tex. Fam. Code Ann. § 263.307(b); *Holley*, 544 S.W.2d at 371–72.